# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *    *
CHRISTOPHER LOVING              *
and CARLA LOVING,               *        No. 02-469V
parents of CAMILLE LOVING,      *        Special Master Christian J. Moran
                                *
           Petitioners,         *
                                *        Filed: July 7, 2016
      v.                        *
                                *
SECRETARY OF HEALTH             *
AND HUMAN SERVICES,             *        Attorneys' fees and costs;
                                *        reasonable fees for fees;
           Respondent.          *        downward departure from lodestar.
                                *
* * * * * * * * * * * * * * * * * * *    *
```

<u>William Dobreff</u>, Dobreff & Dobreff, Clinton Township, MI, for Petitioners;
<u>Darryl R. Wishard</u>, United States Dep't of Justice, Washington, DC, for
Respondent.

## PUBLISHED DECISION ON
## <u>SUPPLEMENTAL ATTORNEYS' FEES AND COSTS</u>[1]

     The December 15, 2015 decision stated there was one final issue to resolve
in this case. As this decision proves, that statement was incorrect. Now in dispute
is another motion for attorneys' fees filed by the Lovings on January 6, 2016. For

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and
Promotion of Electronic Government Services), requires that the Court post this decision on its
website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing
redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).
Any redactions ordered by the special master will appear in the document posted on the website.

Mr. Dobreff's services from May 12, 2014, to date, the Lovings request an additional $8,362.50 in attorneys' fees.  This represents 33.45 hours of attorney's time billed at $250.00 per hour.  The Secretary proposes the motion for fees be completely denied, with the Lovings receiving no additional attorneys' fees.  **The Lovings are awarded $2,090.63.**

## I.     Procedural History Regarding Attorneys' Fees and Costs[2]

The procedural history for this case is available in significant detail in two previous decisions.  See Interim Fees Decision, issued Sept. 10, 2014, 2014 WL 10558839 (awarding $140,000.00 in attorneys' fees and costs); Expert Fees Decision, issued Dec. 15, 2016, 2015 WL 10579257.  The first decision addresses Mr. Dobreff's interim attorneys' fees, and the second addresses the expert costs for Dr. Shuman.  Thus, because the September 2014 decision awarded the Lovings attorneys' fees for work performed through February 6, 2014, the procedural history below will focus on February 2014, to present.

Section A discusses the steps leading to the 2014 decision awarding attorneys' fees and costs on an interim basis.  Section B describes the litigation over adjudicating Dr. Shuman's fee.  Because the Lovings seek an award of attorneys' fees for Mr. Dobreff's work performed during this period, Mr. Dobreff's activities are set forth in some detail.  Section C discusses the Lovings' pending application for attorneys' fees and the Secretary's response.

### A.     2014 Award of Attorneys' Fees and Costs on an Interim Basis

Because the Lovings received compensation in the September 20, 2013 decision, they are entitled to an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa-15(e).  The Lovings filed their motion for attorneys' fees and costs on February 19, 2014.  The Lovings submitted more than 50 exhibits, totaling more than 200 pages.  Pet. for Fees and Costs, filed Feb. 19, 2014.

---

[2] The bulk of the procedural history regarding the Lovings' claim that vaccines harmed their child is irrelevant to this decision.

After discussions between the attorneys, the Lovings agreed to reduce the amount sought in attorneys' fees and costs not related to Dr. Shuman, and the Secretary agreed not to object to the compromised amount.  The parties did not reconcile their differences regarding Dr. Shuman's fees.

The Secretary memorialized her objections to the charges for Dr. Shuman's work, identifying several challenges to aspects of Dr. Shuman's invoice.  Resp't's Resp., filed July 16, 2014, at 5-6.

After reviewing the submissions, the undersigned recognized that the dispute involving Dr. Shuman would probably take significant time to resolve.  Thus, the undersigned held a status conference on September 2, 2014.  In that status conference, the parties expressed an interest in seeking mediation to resolve the expert fees and costs, and the undersigned recommended an interim award of undisputed attorneys' fees and costs.  That recommendation resulted in the September 2014 interim fees decision awarding the Lovings $140,000.00 in attorneys' fees.  Interim Fees Decision, issued Sept. 10, 2014.  Additionally, on the same day, an order referred the disputed expert fees and costs to ADR with Special Master Corcoran.  Order, filed Sept. 10, 2014.

**B.     2015 Decision Awarding Attorneys' Costs for an Expert**

The Lovings incurred all but 0.3 hours of the pending request trying to resolve Dr. Shuman's expert fees.  For convenience, this litigation is divided into four phases.

1.  Alternative Dispute Resolution.  Special Master Corcoran conducted a telephonic ADR status conference on September 22, 2014.  The parties, however, were unable to come to an agreement through the mediation.  Therefore, Special Master Corcoran removed the case from the ADR process.  Order, issued Oct. 7, 2014.  Mr. Dobreff spent 1.55 hours in ADR.[3]  Pet. for Fees and Costs, filed Jan. 6, 2016, exhibit 1 at 2.

---

[3] The amount of 1.55 hours includes the 0.3 hours spent in May and June 2014.

2. <u>November 2014 Brief</u>.  Following the ADR status conferences, both parties requested an opportunity to elaborate on their positions regarding Dr. Shuman's expert fees.  The Secretary filed a supplemental brief on October 17, 2014, stating additional bases for her objections to petitioners' request for $284,203.07 in expert fees and costs.  Although the Secretary continued to accept the proposed hourly rate as reasonable, the Secretary presented two additional arguments for why she did not accept Dr. Shuman's 811 hours as reasonable.  First, the Secretary compared Dr. Shuman's work to other cases in the Vaccine Program that have involved relatively large requests for expert fees.  Second, the Secretary compared Dr. Shuman's work in the present case to other cases in which Dr. Shuman participated.  Resp't's Suppl. Br., filed Oct. 17, 2014.

On November 5, 2014, the Lovings filed a response to the Secretary's objections, including another set of exhibits, again labeled 1 through 10.[4]  A significant portion of the Lovings' response recited the procedural aspects of the case and/or listed topics that Dr. Shuman addressed.  Pet'rs' Resp., filed Nov. 5, 2014, at 2 (discussing Court's <u>Opinion and Order</u>), 7-19.  Much (if not all) of this presentation was not helpful as the undersigned was familiar with the litigation and had reviewed Dr. Shuman's invoices describing his work.

The Lovings did not answer many of the fundamental objections raised in the Secretary's initial July 16, 2014 response.  For example, although the Secretary had identified entries for which Dr. Shuman had charged time but not listed any task, the Lovings did not obtain supplemental information to fill this gap.[5]  The

_____

[4] Of these November 5, 2014 exhibits, the only meaningful one is exhibit 10, a second affidavit from Dr. Shuman, which updated his previous affidavit, exhibit 38.

[5] The Lovings asserted that "Respondent did not object to lack of specificity in Dr. Shuman's billing or any block billing.  There was no suggestion by Respondent's experts that it was unreasonable or unnecessary to review and analyze an article relied on by Dr. Shuman in Respondent's review."  Pet'rs' Resp., filed Nov. 5, 2014, at 5.

This statement is accurate only if the source of the Secretary's objections is restricted to the October 17, 2014 brief.  In the earlier response, the Secretary argued that Dr. Shuman's invoice was vague and the time he spent reviewing articles was excessive.  Resp't's Resp., filed July 14, 2014, at 5-6.

Lovings did, however, directly address some of the Secretary's supplemental October 17, 2014 arguments.

In this phase, Mr. Dobreff has invoiced for 17.8 hours.  More than 12 hours were attributed to either researching or drafting the November 5, 2014 brief.  The remaining time was primarily communications (letters, emails, and telephone calls) with Dr. Shuman.  Pet. for Fees and Costs, filed Jan. 6, 2016, at exhibit 1 at 2-3.

3. 2015 Briefing.  Once the undersigned again took up the matter after these briefs, the undersigned requested additional information from the Lovings to explain the work that Dr. Shuman performed.  Order, filed June 24, 2015.

On July 15, 2015, the Lovings filed a status report that did not provide much helpful information.  In addition, the Lovings filed another set of exhibits, which largely confused the state of the record because the Lovings cited to the exhibits appended to the status report, rather than the exhibits filed during the merits phase.[6]

The undersigned ordered the Lovings to file an electronic version of a spreadsheet that reproduced Dr. Shuman's invoice in a series of rows and columns.  See order, issued July 27, 2015.  The Lovings filed the electronic spreadsheet on August 6, 2015.  Pet'rs' Status Rep., filed Aug. 6, 2015.  That spreadsheet was valuable in analyzing the Lovings' claim.

After receiving the Lovings' spreadsheet, the undersigned ordered the Secretary to analyze Dr. Shuman's work on a line-by-line basis.  Order, filed Sept. 4, 2015.  The Secretary explicitly disputed almost half of Dr. Shuman's bill, $132,718.33 of the $282,130.86 requested.  Resp't's Resp., filed Sept. 17, 2015.

From January 20, 2015 through October 20, 2015, Mr. Dobreff has invoiced for 13.4 hours.  More than half this time was associated with preparing the July 15,

---

[6] For example, during the merits phase of the case, the Lovings filed Dr. Shuman's annotation to his bibliography as exhibit 90.  The Lovings reproduced this annotation as exhibit 7 to the July 15, 2015 status report.

2015 status report.  Pet. for Fees and Costs, filed Jan. 6, 2016, at exhibit 1 at 3-4.
Mr. Dobreff did not charge for producing the electronic spreadsheet.

    4.  <u>Wrap-Up</u>.  The Expert Fees Decision awarded the Lovings' two-thirds of
Dr. Shuman's requested amount, or $188,087.22, plus full costs of $1,322.03.  In
reviewing this decision and communicating with Dr. Shuman, Mr. Dobreff spent
0.7 hours.  <u>Id.</u>, at exhibit 1 at 5.

### C.    Petitioners' 2016 Motion for Additional Attorneys' Fees and Costs

    The Lovings' January 6, 2016 motion for attorneys' fees and costs is
substantially similar to the motion they filed in February 2014, to include many
moot points, such as Dr. Shuman's hourly rate.  The motion does include
significant information regarding how petitioners' attorney determined his
reasonable hourly rate.  <u>Id.</u>, at 2-3.

    Identical to the February 2014 interim attorneys' fees motion, the January
2016 motion states that the "fees and costs are reasonable in light of the length of
the case, complexity of the issues, the appeal and the underlying injury of infantile
spasms."  There is no specific discussion regarding the substance of the current
motion for fees, a prolonged expert fee dispute.

    The thrust of the Secretary's opposition is that "[a]ll of the work performed
by counsel after May 12, 2014 was in an attempt to correct the deficient evidence
regarding Dr. Shuman's invoices, all of which should have been filed with the
Motion on February 19, 2015."  Resp't's Resp., filed Jan. 15, 2016, at 3.

    In large part, the rest of the Secretary's opposition reiterates shortcomings
raised in the December 15, 2015 decision regarding Dr. Shuman's expert fees.  The
Secretary highlighted that much of petitioner's presentation regarding Dr.
Shuman's fees was unhelpful, in some cases confused the record, and that there
was no excuse for this as "petitioners knew up front what was expected of them
when submitting Dr. Shuman's invoices for payment."  <u>Id.</u> at 4.

    Petitioners did not reply to the Secretary's response to their motion.

## II.      Standards for Adjudicating Applications for Attorneys' Fees and Costs[7]

The Vaccine Act authorizes special masters to award only "reasonable" attorneys' fees.  42 U.S.C. § 300aa–15(e)(1).  To determine the reasonableness of a request for attorneys' fees, the court must first conduct a lodestar analysis in which a reasonable hourly rate is multiplied by a reasonable number of hours.  See Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008); Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Avera, 515 F.3d at 1348.

The Federal Circuit has endorsed awards of attorneys' fees for litigation fee disputes.  Schuenemeyer v. United States, 776 F.2d 329, 333 (Fed. Cir. 1985).  Special Masters have generally allowed "fees for fees," albeit with reductions consistent with the reasonableness and specific findings standards applied to attorneys' fees.  See Turkupolis v. Sec'y of Health & Human Servs., No. 10-351V, 2015 WL 393343, at *4-5 (Fed. Cl. Spec. Mstr. Jan. 9, 2015) (reducing fees for duplicative and excessive work); Sucher v. Sec'y of Health & Human Servs., No. 07-58V, 2013 WL 5532179, at *18 (Fed. Cl. Spec. Mstr. Sept. 17, 2013) (not compensating petitioners for time spent litigating an issue for which there was no basis to litigate); Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2013 WL 2350541, at *2-3 (Fed. Cl. Spec. Mstr. May 6, 2013) (reducing fees for fees by two-thirds based on two out of three of the primary issues in petitioner's filings being unreasonable); Garcia v. Sec'y of Health & Human Servs., No. 07-286V, 2011 WL 6941702, at *10 (Fed. Cl. Spec. Mstr. Dec. 13, 2011) (not compensating an attorney for work necessitated by a problem the attorney created).

## III.     Analysis

Consistent with Avera, this analysis contains two components.  The first is a determination of the lodestar.  The second is adjustment to the lodestar.  Avera, 515 F.3d at 1348.

---

[7] The Expert Fees Decision lists additional criteria.  2015 WL 10579257, at *8-9.

## A.    Lodestar

The well-known lodestar formula includes a reasonable hourly rate and a reasonable number of hours.  The Lovings propose compensating Mr. Dobreff at a rate of $250.00 per hour, and the Secretary does not object to that rate.  The undersigned also finds that rate reasonable.

For the reasonable number of hours, the undersigned has reviewed the timesheets.  At a superficial level, the number of hours Mr. Dobreff spent is reasonable.  For example, he spent 0.15 hours preparing a motion for enlargement of time on November 3, 2014, and 0.20 hours reviewing an order on July 29, 2015.  As discussed below, one problem is what the attorney produced, not how much time was spent.

Consequently, for the first component, all Mr. Dobreff's hours are tentatively accepted.  This results in a lodestar determination of $8,362.50 (33.45 hours multiplied by $250.00 per hour).

## B.    Adjustments to Lodestar

After the lodestar is calculated, the amount awarded in attorneys' fees may be adjusted, either upward or downward, "based on other specific findings."  Avera, 515 F.3d at 1348, citing Blum v. Stenson, 465 U.S. 886, 888 (1984).  "Adjusting the lodestar has been condoned for situations in which the prevailing party's attorney's performance or conduct somehow is not factored into the lodestar calculation."  Lumen View Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479, 485 (Fed. Cir. 2016).  Adjustments to the lodestar occur rarely.  See Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2013 WL 658439, at *6-7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (rejecting the Secretary's argument that the fee for litigating attorneys' fees should be reduced because it was disproportionate to the amount sought in attorneys' fees); Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2010 WL 1783542, at *5 (Fed. Cl. Spec. Mstr. April 14, 2010) (adjusting lodestar for filing an unsuccessful motion for review after the Court criticized the motion for review).

Here, two findings justify a reduction to the lodestar calculation.  First, Mr. Dobreff's lack of oversight of Dr. Shuman fundamentally caused the dispute over expert fees.  Second, Mr. Dobreff's contributions to resolve the dispute over attorneys' fees were largely ineffective.

### 1.      Counsel's Failure to Monitor Dr. Shuman

The Expert Fees Decision details deficiencies in Dr. Shuman's billing practices that led to a significant reduction in expert fees.  2015 WL 10579257, at *9-15.  These major deficiencies included poor item descriptions, redundant research work, and billing for administrative tasks.  Id. at *9-12.  These major deficiencies, ultimately, are Mr. Dobreff's responsibility.  See id. at *8 (citing cases).

These consistent deficiencies are inexcusable because they occurred very early in the case, and were obvious.  Dr. Shuman's Feb. 25, 2005 invoice contained charges for which no task was listed.  Id. at *13.  Despite this red flag, the subsequent June 21, 2006 invoice also contained entries without tasks.  Id.  The lack of any description for some tasks places Dr. Shuman's invoices well outside of the boundaries of what could be considered reasonable billing practices.

In the Lovings' January 6, 2016 petition for fees and costs, they had a chance to respond to the Expert Fees Decision.  The motion does not challenge either the legal proposition that counsel has the duty to monitor expert invoices, or the factual finding that Mr. Dobreff did not monitor Dr. Shuman's invoices adequately.

Had Mr. Dobreff corrected Dr. Shuman's billing practices early, Dr. Shuman would not have continued to submit defective invoices.  An early correction by Mr. Dobreff, therefore, would have eliminated the disputes over large portions of Dr. Shuman's bills.  If there were no dispute over Dr. Shuman's bills, then, it follows, that there would be no attorneys' fees for litigating Dr. Shuman's fees.  Mr. Dobreff's conduct (or more precisely his lack of action) is at the root of the dispute over attorneys' fees that took place from September 21, 2014 through December 17, 2015.  An attorney "will not be compensated for solving a problem that he created."  Garcia, 2011 WL 6941702, at *10.

### 2.      Counsel's Work during the Fee Dispute Was Not Helpful

The previous finding concerns Mr. Dobreff's activities that largely caused the dispute of Dr. Shuman's bill.  This finding concerns Mr. Dobreff's activities after the dispute over Dr. Shuman's fee began.

The Secretary raised questions about many of Dr. Shuman's entries. Resp't's Resp., filed July 17, 2014; Resp't's Suppl. Br., filed Oct. 17, 2014. Counsel's choice was either to defend the entries by providing additional explanation, or to exercise billing judgment by removing the entries. Here, Mr. Dobreff attempted to justify the time. However, this defense was largely ineffective, probably because the passage of time and loss of memory prevented Dr. Shuman from recapturing information that should have been recorded years earlier. In absence of a plausible defense of specific entries on the invoice, the appropriate response to the Secretary's objection would have been to remove the charges. See Saxton, 3 F.3d at 1521 (requiring fee applicant to exercise "billing judgment").

When ordered to justify Dr. Shuman's invoices, the Lovings could not. Their July 15, 2015 status report actually made their claim for an award of expert fees more confusing. Mr. Dobreff spent hours reviewing the hearing transcript, but this task was not requested, and did not produce relevant information.

The Lovings' most useful contribution to the resolution of the dispute over expert fees was the creation of the electronic spreadsheet. However, as mentioned earlier, Mr. Dobreff appropriately did not charge for this clerical task.

The electronic spreadsheet enabled the undersigned to turn to the Secretary for additional assistance. The Secretary's line-by-line review of Dr. Shuman's invoices must have taken a considerable amount of time, but greatly reduced the scope of the dispute. In a way, the Secretary rescued Mr. Dobreff by removing the bulk of Dr. Shuman's hours from the dispute.

The undersigned prefers not to create a litany of complaints about Mr. Dobreff. After all, Mr. Dobreff helped his clients obtain a settlement that should assist them in caring for their daughter. This is a significant accomplishment, one for which Mr. Dobreff has received compensation. Interim Fees Decision, issued Sept. 10, 2014. However, Mr. Dobreff's work in the litigation over Dr. Shuman's

fees fell well short of the quality that is expected, especially given the amount of money in dispute.[8]

### 3.    Assessment

These two findings support an adjustment to the lodestar.  It should be emphasized that this type of adjustment happens in exceptional cases.  The present case is exceptional because (1) Mr. Dobreff's inattention to Dr. Shuman's invoices, which were blatantly problematic, was the primary cause of the dispute over Dr. Shuman's fee, and (2) Mr. Dobreff contributed relatively little to assist in resolving Dr. Shuman's fees and, in some ways, made the resolution process more cumbersome.

Under these circumstances, an appropriate award is 25 percent of the amount requested.  The Lovings are awarded $2,090.63.

## IV.    Conclusion

The Lovings are awarded $2,090.63 in additional fees for Mr. Dobreff.  This award is in addition to the amount for attorneys' fees and costs awarded on September 10, 2014.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

S /Christian J. Moran
Christian J. Moran
Special Master

---

[8] Petitioners' January 6, 2016 motion similarly reflects a relative lack of attention from Mr. Dobreff.  The motion does not address the fundamental reason why the dispute over Dr. Shuman's fees was so protracted.

11